at all, oral argument not to exceed 15 minutes or more. Mr. Gragas, Supervising Attorney for our Law School in the Department of the Appellate. Good morning, Your Honor. As Director of the Appellate Litigation Clinic at the University of Virginia School of Law, I'd like to introduce to the Court this morning third-year law student David Martin, who satisfies the requirements for student practice and who has the consent of our clients to argue this appeal. Thank you. That was granted. I appreciate your coming here. You may proceed. May it please the Court, Opposing Counsel, my name is David Martin and I represent the appellants, which in this case are Ohioan voters, state judges, state judicial candidates, and the Democratic Party of Ohio. I've asked to reserve three minutes for rebuttal. You may. This is a crucial case and it implicates the unconstitutional way in which Ohio elects its state judges. Ohio law works in the following fashion. It mandates partisan primaries for the major political parties and then strips the party And indeed, part of the 365th day of the year, partisanship abounds in Ohio's judicial elections. There's partisan campaigning, including by incumbent and thus sitting state judges. There are mandatory partisan primaries, as I mentioned, for the major political parties. There's party-based fundraising, endorsement, and advertising. The Supreme Court said that most of that's constitutionally protected, right? That judges can say what their partisan affiliation is. There is a right to say what the partisan affiliation is, and importantly, we don't challenge that right here. What we challenge is the lower court's application, the district court's application of the Anderson-Burdick standard. I'm sorry, the what standard? The Anderson-Burdick standard, the Anderson-Burdick balancing test. Importantly, restrictions on First Amendment freedom of... What I understand about this case, maybe it's too simple, but it is simply that once you get to the general election, they don't want that on the ballot to be a partisan election, and so they do not want on the ballot the candidate to be designated as a Democrat or as a Republican or as an Independent or as a Communist or Republican. Why that implicates free speech. Well, the ballot is a place, as the court has recognized in cases including Burdick itself, which is a case in the Anderson-Burdick, you know, those two cases, recognize that laws limiting, regulating voting have an implication on First Amendment, burden First Amendment rights of association. Now, that doesn't necessarily mean they're unconstitutional. That's where the Anderson-Burdick standard comes in. If the burden is less than severe, the appropriate test is to weigh the constitutional burdens against the advancement of a state interest. Here, the only burden is that when the voter is in the voting booth, state in effect indicates the judges are different and we want you to fair statement. And that's something that states do in various ways. In Kentucky, you have the partisan, at least in my county, the partisan offices are on one side of the ballot and you have to turn the ballot over and look at the judges on the other side without partisan designation. Correct. And we don't contest the purported state interest that is put forth here, which is limiting partisanship in judicial elections. As you've touched on, that is an important value that we contend here is that Ohio's law, and it's important to look at the Ohio's judicial election law as a whole, is so poorly tailored as to render that purported state interest illusory. Why is it? I mean, I recognize you're saying that you could do more. As I say, in Kentucky, you go on the ballot from the beginning with no partisanship. But it's a balance and clearly you're concerned in a sense that it does work. Because you're concerned that when the voter looks at the judges, he doesn't get partisan cues. So that seems to mean that it does work to some extent. That's correct. I think it's important in the Anderson-Burdick framework to ask at what cost, and that's essentially asking the same balancing inquiry. The cost here is in hundreds of thousands of voters who are dropping off. Now, of course, not all of that drop-off is attributable to this but that cost is exactly what happens in other states. That is, again, in my Kentucky example, the number of people who vote on the judicial backside of the ballot is less than the number who vote for president or senator. Correct, and I think it's accurate to say that there are multiple causes of that voter drop-off. But there is uncontroverted testimony at the TRO hearing from Professor Michael Margolis, who also cites other studies of this sort, saying that a major cause of that voter drop-off is the removal of the partisan label at the general stage. I want to question a little bit the negative value of drop-off. I would have thought that an observer of our election system from far away, say from a different continent or a different thing, voters come in, they vote on the elections they know about, and they don't vote on the elections they don't know about. I have to testify. As long as we're testifying, I drop off lots of times. I get to a point on the ballot where I know neither one of the candidates know nothing about them, and so I say, well, that person is going to have to get elected based on people who are voting who know something, right? So why isn't it kind of a good thing that you have drop-off? It shows that voters are self-disciplined as to whether they're voting on something they know about or not. I think, for one thing, the Supreme Court has expressed disdain in cases like the U.K.'s for paternalistic approaches, kind of forcing voter drop-off for uninformed voters. But moreover, I think it's... I'm not talking about forcing, I'm talking about, you're not saying people are forced to drop-off. Correct. People self-select to drop-off. Correct. Why is that a bad thing? I think because... Not because some Supreme Court case mentioned it. Why, as a matter of democratic principles or political science or whatever kind of neutral principles you want, why is that a bad thing? It's like a great thing. Well, I think because you're frustrating their First Amendment rights. Their First Amendment associational right is frustrated when they are unable to do so in an informed way at the ballot. And... They're not unable to do so, they just haven't done so. Well, as... They don't like either one of them. Sorry? You have two people on the ballot, you know, maybe they don't like either one of the candidates. They just... They may not know anything about this election, as Jez Rogers says, or they may know all about the election, and they think both are poor. Correct. And I think it is accurate that there is voter drop-off caused by one controverted that says that that voter drop-off is caused in large part by this revocation of the partisan indicator. Which suggests that some people are not voting because they aren't told which party the person is in. Correct. But that's what the legislature wants them to think about, other things than party, when they vote in the general election. And this Judge Bott says that's... That's what... That's what Ohio wants, right? I think, to answer your question, I think what's... It's important to understand the two kind of goals of limiting partisanship in judicial elections, and to examine them kind of in turn. One is apparent impartiality of judges, that is, the public views their judges as in favor of a certain way, in favor of a certain party or ideal. If you look at the way this law suits those two interests, that... It very much undermines the tailoring of the law. With respect to apparent impartiality, the panoply of ways and the, again, 364 and a half days a year in which partisanship abounds, just like it does in openly partisan elections in Ohio, undermines this interest in apparent impartiality. With respect to actual impartiality... Is that argument sort of undermined by the Supreme Court's case the other day? When was it, yesterday? Yesterday, Williams Yearly. They pretty clearly say you can take partial steps. Yeah, you can take partial steps, but I think that this... The structure of this law is... Completely undermines the tailoring. It doesn't act... Like sort of incoherent. Right. Speaking in both directions. Sorry? Speaking in both directions, because it's partisan at one stage and non-partisan at the other stage. Right, and if you will, kind of the partisan cup overflows. By the time you reach the general election ballot, it is clear to voters that have lived, you know, that have been... Why does it have to go all the way, though? I mean, if it goes 98% of the way, why does it have to go 100% of the way? I mean, that's the thrust of the Supreme Court's Yuley decision, is that you don't... Just because you've gone part of the way doesn't mean you have to go all the way. And that's accurate, and I think you don't have to go all of the way, but... Why can't they do it just at the very end, as a sop to the idea that judges are not partisan? Sure. At one minor step at the end, which says you vote on a non-partisan basis. In the abstract, I think that's totally accurate, but when you compare it to the First Amendment burdens here, which... Well, so you have to have a burden, then. Correct, and I... The burden is the drop-off, which I'm not seeing how that's a burden at all. So what's the burden? Well, the District Court found the burden to be just barely less than severe with respect to the voters. Correct. That's correct. And I think the best evidence of the burden is the voter drop-off, but as tied in by Professor Margolis' testimony, that this voter drop-off is caused by virtue of the... You would agree that if voter drop-off is not a problem, then you lose your case. I think voter drop-off is only the best evidence we have. I don't think we... What else is there? Well, did Margolis... I mean, I didn't go into that, but did Margolis look at actual results where my impression is that this design does work in the sense that there is much more deviation from partisanship in the judicial elections, i.e. either side, Democrat or Republican than a down-ballot, you know, auditor or something? Did Margolis testify at all about those results? I mean, you see this practically. Somebody who's got a good name does much better than their party designation would give them. I don't believe Margolis testifies to that. His testimony is more in the nature of, in his experience as a judicial... Strictly on drop-off. Let me ask you this, because you keep talking about the First Amendment rights. Washington State Grange has the footnote that flatly says the First Amendment does not give parties a right to have their nominees designated on the ballot. So why does it give them a leg up against a partial state system? So they do not have a categorical right to have their party designated on the ballot. However, candidate... When First Amendment rights are frustrated, as in this case, the Anderson verdict test counsels us to weigh those, just as in the Timmons case. The First Amendment right that's frustrated here is the right of the candidate to use the state's paper to make a statement? I see I've run out of time, but I'd love to get a response. Go ahead and answer that. The First Amendment right that's frustrated here is very similar to the right frustrated in the Timmons case. Timmons was not a severe burden, but they went on to conclude that there was a burden, a frustrated First Amendment right to association, and they proceeded to do the balancing inquiry. They sure didn't. I mean, the part that's cited in Washington State Grange itself says, we're unpersuaded that the party's contention that it has a right to use the ballot. Again, and that's referring to a categorical right. I think that's why it's important to understand the context in the Timmons case especially. You don't have a categorical right, but you've got a little bit of a right to balance. That goes to the balancing inquiry, correct. Okay, counsel, you'll have your time for rebuttal. Thank you very much. Your Honors, my name is Renata Staff. I'm an assistant attorney general from the Ohio Attorney General's office, and I'm here on behalf of the appellees and the intervener attorney general. Appellants here are challenging governmental speech on a state ballot. And to be clear, the statute here only requires that judicial candidates appear on the nonpartisan portion of the general election ballot. As all of you have correctly noted, appellants here have suffered absolutely no infringements on their First Amendment rights. As a result, we ask that you affirm the district court's holding that the statute is constitutional under the Anderson-Burdick framework. Do you happen to know how many states there are who require a general election and a general election ballot that there not be designated partisan statements on the ballot itself? I can speak with respect to the judicial election process. Yes. And that I know of, there are two states that have kind of the same setup that Ohio does here. So Michigan has a statute that requires justices for the Michigan Supreme Court to be chosen in a party primary, and then those justices appear without their party identifier on the general election ballot. Michigan has one. Michigan has one. Likewise, in Arizona, in counties that have 250,000 residents or less, their elections for superior court judge have a similar setup. The judicial candidates are elected through party primaries and then appear on the general election ballot without the party identifier. There are also a lot of states that have judicial elections, but no party designation appears either. That is absolutely correct. Yes. Probably a lot more of those, but they don't have the party primary feature. Yes, Your Honor. And here there's no requirement, as appellants suggest, that the state interest and the statute here be a perfect fit. The courts have all recognized that states have sufficient, a lot of leeway to control elections in order to ensure that they are fair, honest, and orderly. And more to the point, states. Would that include allowing the states to not designate in a United States Senate race or for a president of the United States whether someone is a Democrat, Republican, or something else? Your Honor. Would that be a First Amendment violation if it were done at that level? Your Honor, here the courts have all recognized that judicial elections are fundamentally different from elections for candidates for the legislative or executive branches. And, in fact, you referenced the William Zulie versus the Florida Bar case. Do you think it would be a violation of the First Amendment if it were not a judicial election? Your Honor, this isn't the case before us because here the state has been found to have a compelling interest as the United States Supreme Court noted. That's why it's called a hypothetical. That's why he's asking you. Of course. My memory is, and help me here, Washington and California have this top two system where you run in a general basis and the top two who may be from the same party. I think Washington allows you to designate who you prefer, but is there any case that says that's constitutionally required? You may be referencing the Washington State Grange case where the Supreme Court found a statute that allowed candidates to self-designate their partisan affiliations on the ballot was constitutional because voters in that case... That allowed them to. I'm asking is there anything that said that you had to. In California, I don't know how they're labeled when they get to the final, but, again, is there anything that has... I mean, I'm not saying one way or another how it would come out, but I didn't think that anybody had ever tried to take that off so that there would be any decision. Is that your understanding of the law? That is, Your Honor. I think that's accurate. Nobody's ever tried in any non-judicial elections to have a non-partisan election. Your Honor, I... I may be wrong. I have the feeling that some places in the South, as the Republicans were rising, they tried to take the party labels off, and I don't know what happened with that. I mean, politics go a lot of different ways. That's true, Your Honor. Honestly, I can't speak for how... I don't know whether there have ever been such instances or not. Listen, usually there have been some instances somewhere of something like this, but I don't know either. I just wonder. And you say the judicial election is entirely different. Yes, Your Honor. So it doesn't make any difference what the answer is to everybody else's elections. That's exactly right. The Supreme Court actually yesterday noted in the Williams-Uli case that judicial elections are fundamentally different from elections for executive branch candidates or legislative branch candidates because the public's perception of the integrity and impartiality of the judiciary is the sole basis for the authority of the judiciary. And to this end, Ohio has an interest in not only maintaining the integrity of its judiciary, but also in maintaining the public's perception of the judiciary's trustworthiness. And this overarching interest in reducing and diminishing partisanship in judicial elections is clearly promoted by the statute here. And I would like to kind of address the standard that may guide this Court's consideration in determining the constitutionality of the statute. Here, as you've noted, there are absolutely no infringements on any of these appellants' First Amendment rights. As a result, when you're applying the Anderson-Burdick framework, that first step, determining the character and magnitude of the burdens imposed, is key. And that really determines the level of scrutiny that courts apply to review these types of election statutes. Here, in light of the minimal burdens, the appropriate review is certainly the rational basis test, which requires the state to proffer an interest that is non-discriminatory, that is rational, that is legitimate. Here, there is absolutely no argument that the state has a legitimate, rational interest in ensuring the integrity and impartiality of its judiciary. And even if this Court chooses to apply more of an intermediate scrutiny under the balancing test, the statute is still constitutional in light of the minimal interest that appellants could possibly demonstrate here. Because, again, the statute is first presumed to be constitutional and the state's important interest in maintaining the reality and the perception of trustworthiness of the judiciary clearly passes constitutional muster. As noted, appellants here have not had any First Amendment rights to associate or to speak impaired because the statute does nothing to impair those rights. Rather, it's a control of the state's speech on its ballot. Parties here retain great ability to communicate with the electorate through campaigning. And as this Court noted, the voters here who are appellants in this case have also not had their any First Amendment rights unconstitutionally burdened because there is no right to use the ballot to get every kind of information a voter could potentially need to make an informed vote. Rather, the Supreme Court has noted that voters have the wherewithal to educate themselves in order to get all the information they could possibly need to make an informed vote. Here, voters have all sorts of alternative avenues to associate. And, you know, the states, as I've noted, possess broad power to control election laws and also to control the appearance of candidates on their balance. Such regulations will inevitably affect voters, the candidates, and political parties, but reasonable, non-discriminatory regulations that promote a state's importantly held interest certainly pass constitutional muster. I would be happy to answer any more questions. If not, I believe we will certainly just ask the Court to uphold the District Court's judgment that the statute is constitutional. Thank you. Thank you, Your Honors. Mr. Martin, you have your time for rebuttal. I'd like to address this concern regarding the burden in this case. To quote the Yu case from the Supreme Court, a state's claim that it is enhancing the ability of its citizenry to make wise decisions by restricting the flow of information to them must be viewed with some skepticism. That is the case here. I want to, again, direct the Court's attention to Timmins, which was a case banning Fusion Party. What actually happened in Yu? Yu was a case of there was a ban on party affiliation at the primary stage, and that was invalidated by the Supreme Court. I also want to direct the Court's attention again to Timmins, which is a case that went through the Anderson verdict framework, decided there was not a severe burden. But Timmins is a very analogous case to this in the following fashion. The ban on Fusion candidates looks very similar to this, to the ban in this case. However, the burden imposed in that case was much smaller in that it only affected a smaller political party, and thus a smaller number of voters and a smaller number of candidates that were going to make the ballot. Moreover, the tailoring in the Timmins case was different as well. That law was actually well tailored to accomplish the goals of clarity of the ballot and preventing voter confusion. Counsel, your argument sounds now like you would challenge a system that was nonpartisan throughout, whereas I took your briefs to be challenging this system primarily because it was partisan at the primary stage and nonpartisan at the general election stage. Are you sort of expanding your argument so that it covers more now? No, Your Honor. I'm sorry. I've given that impression. The difference between the—several different states have systems that are nonpartisan throughout, and the difference in those states— I'm conceding that those are okay. Yes, and the reason— The real harm or the real crux of your challenge, as I understand it, but correct me if I'm wrong, is that it's partisan at the primary stage and, at least in terms of the ballot, is nonpartisan at the general election stage. Is that correct? Yes, that hybridization. And I think even Judge DeLotte said that that was kind of incoherent. That's correct, yes. I wonder whether that's true, and my colleagues have asked hypothetical questions, so I want to ask a different hypothetical question, which goes to why isn't this a thoughtful and wise way of doing things? Let's say, for instance, instead of judges, you had a system where a political subdivision got to elect coroners, let's say, and the people who are drafting the system say, well, we don't want political hacks as coroners. We want the highest quality coroners we can get. How can we devise a system that will get that? Do we want people self-nominating? No. Well, let's see. We've got these great political parties. They're good at finding candidates. We'll get the political parties involved in coming up with the best people from each party who's going to be a good coroner. But to make sure that they get the best person from each party who's a good coroner, who would make a good coroner, we'll make the general election nonpartisan so that you could logically have a system, it seems to me. Some political scientists might even argue it's the best system, where you have the political parties coming up with the candidates from their adherents, the best one that can win a nonpartisan election, who's probably going to be not the strongest Democrat, but the strongest potential coroner. Then when you go to the general election, of course that's only going to work if in the general election it's nonpartisan. So then you would want to telegraph to the voters, vote for the best coroner. Why isn't that not just not incoherent, but perfectly coherent and logical? That's my question. I think the answer goes back to the Anderson-Burdick. I see I've run out of time, but I'd love a chance for this one. It goes back to the Anderson-Burdick framework, which is that removing the partisan label, as the Supreme Court held in Timmins, burdens First Amendment rights. I was asking you why isn't this a logical way to run things instead of I was challenging Judge DeLotte's conclusion that this is incoherent, not asking you to go through all the cases. Why isn't that logical? A logical way to get the best coroner, in my example. The purpose of this law is not to get the best judge. It's to reduce partisanship in judicial elections. That's okay. You might think that helps get a best judge. The best coroner, for sure. Maybe all the coroners, by coincidence, all happen to be Democrats. You're hypothetical. The tailoring of that law may be well done, but the tailoring here is, as Judge DeLotte said, which is this law is not well tailored to accomplish its goal. This law and the laws, the structure that surrounds it. Thank you very much. Counsel, let me ask you about the Yu case. That was not about what was on the ballot. That was about the speech of the political parties off ballot, was it not? That's correct, yes. Thank you. The case will be submitted. The clerk may call the next case.